EDMUNDS MAKI VERGA & THORN
Attorneys at Law, A Law Corporation

| | |
|---|---|
| JOHN S. EDMUNDS | 734-0 |
| RONALD J. VERGA | 2638-0 |
| CATHERINE A. KENDRICK | 7127-0 |

841 Bishop Street, Suite 2104
Honolulu, Hawaii 96813-3945
Tel: (808) 524-2000

Attorneys for Defendant
ANDREW K. MIRIKITANI

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 1 3 2001

at 2 o'clock and 30 min ___ M
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. 00-00442 HG |
| Plaintiff, | DEFENDANT ANDREW K. MIRIKITANI'S MOTION FOR A NEW TRIAL; MEMORANDUM IN SUPPORT OF MOTION; EXHIBITS A-F; DECLARATION OF JOHN S. EDMUNDS; AND CERTIFICATE OF SERVICE |
| v. | |
| ANDREW K. MIRIKITANI, (01)<br>SHARRON BYNUM, (02) | |
| Defendants. | |
| | DATE: **NON-HEARING MOTION**<br>TIME:<br>JUDGE: _____ |
| | Trial Date: June 13, 2001 |

### NOTICE OF HEARING OF MOTION

TO:   J. MICHAEL SEABRIGHT, ESQ.
      Assistant U.S. Attorney
      Room 6100, PJKK Federal Building
      300 Ala Moana Boulevard
      Honolulu, HI 96850

      Attorney for Plaintiff
      UNITED STATES OF AMERICA

C:\Data\CLIENTS\Mirikitani\031



EXHIBIT 1

WILLIAM M. DOMINGO, ESQ.
Office of the Federal Public Defender
Room 7104, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, HI 96850

Attorney for Defendant
SHARRON BYNUM

**NON-HEARING MOTION**

NOTICE IS HEREBY GIVEN that Defendant Andrew K. Mirikitani's Motion for a New Trial shall come on for hearing before the Honorable _____, Judge/Magistrate-Judge of the above-entitled Court, in his/her courtroom in the United States Courthouse, 300 Ala Moana Boulevard, Honolulu, Hawaii, on _____ _____, _____, 2001, at _____ o'clock, or as soon thereafter as counsel may be heard.

DATED: Honolulu, Hawaii, July 13, 2001.

_____
JOHN S. EDMUNDS
RONALD J. VERGA
CATHERINE A. KENDRICK

Attorneys for Defendant
ANDREW K. MIRIKITANI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| UNITED STATES OF AMERICA, | ) | CR. NO. 00-00442 HG |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | DEFENDANT ANDREW K. MIRIKITANI'S MOTION FOR A NEW TRIAL |
| ANDREW K. MIRIKITANI, (01) | ) | |
| SHARRON BYNUM, (02) | ) | |
| Defendants. | ) | Trial Date: June 13, 2001 |

### DEFENDANT ANDREW K. MIRIKITANI'S MOTION FOR A NEW TRIAL

Comes now Defendant Andrew K. Mirikitani, through his attorneys undersigned, and moves this Court, pursuant to Rule 33 of the Federal Rules of Criminal Procedure, for a new trial herein.

This motion is based on the records and files herein.

DATED: Honolulu, Hawaii, July 13, 2001.

_____
JOHN S. EDMUNDS
RONALD J. VERGA
CATHERINE A. KENDRICK

Attorneys for Defendant
ANDREW K. MIRIKITANI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 00-00442 HG |
| Plaintiff, | ) ) | MEMORANDUM IN SUPPORT OF MOTION |
| v. | ) ) | |
| ANDREW K. MIRIKITANI, (01) SHARRON BYNUM, (02) | ) ) ) | |
| Defendants. | ) ) | Trial Date: June 13, 2001 |

MEMORANDUM IN SUPPORT OF MOTION

Defendant Andrew K. Mirikitani moves for a new trial in the interest of justice and on the basis of evidentiary errors which occurred at trial herein. The bases upon which Defendant Mirikitani is entitled to a new trial are as follows:

I.  PREJUDICIAL "SPILLOVER" EFFECT FROM 18 U.S.C. § 666 COUNTS.

Defendant Mirikitani is contemporaneously filing an alternative motion for judgment of acquittal on Counts 2 and 3, the two 18 U.S.C. § 666 counts of the Indictment. As is set out in that motion and supporting memorandum, as a result of a pretrial ruling by the Court, those counts were permitted to go to the jury without presentation to the jury of evidence of any nexus between the offense conduct and federal funding or programs, an element of the offenses. The jury returned a verdict of guilty on those two counts. Because other counts of the Indictment covered similar or related offenses, Movant urges there was a prejudicial "spillover" effect from the additional, unwarranted 18 U.S.C. § 666 charges and the jury's conviction on those charges which infected the remainder of the verdict. See, e.g., United States v.

Adkinson, 135 F.3d 1363 (11th Cir. 1998); United States v. Novod, 927 F.2d 726 (2nd Cir. 1991) (prejudicial spillover from evidence used to obtain a conviction subsequently reversed on appeal).

II. **EVIDENTIARY ERRORS WHICH OCCURRED AT TRIAL JUSTIFY A NEW TRIAL HERE.**

   A. *The Scope of the Cross-Examination of Agent Futa Regarding His Interview of Garrett Serikawa Was Improperly Limited.*

Agent Futa recorded Garrett Serikawa as having made statements concerning his contacts with his son Jonn after the alleged bribe-kickback offer was made: (1) that "sometime between approximately May 1999 and July 1999" Jonn came to Garrett's house; (2) that this was shortly before Jonn was paid a bonus; (3) that the two had a discussion about the alleged bribe-kickback; and (4) that there were one or more discussions after Jonn had received the bonus, in which Jonn told Garrett Serikawa that he had opened a bank account, deposited the check, withdrawn a portion of the funds in cash to pay the kickback, and that some question had arisen as to the amount of the kickback he had paid was correct. Agent Futa memorialized this interview in a Form 302. A true and correct copy of that 302 form dated March 13, 2000, is attached hereto as Exhibit A.

Garrett Serikawa's in-court testimony differed in substantial respects from what he told Agent Futa: he testified that his son Jonn had telephoned him once, either on the day the bribe-kickback had been proposed or shortly thereafter, and that Garrett Serikawa and Jonn Serikawa had met on the Fort Street Mall outside Garrett Serikawa's office building. [Transcript of Proceedings ("Tr.") held on June 20, 2001 at pages 108-110; a true and correct copy of excerpts from the 6/20/01 transcript is

attached hereto as Exhibit B.] He testified that a week or two after that first meeting, he had a second meeting with Jonn Serikawa at his house, at which Jonn described the receipt of the funds and the payment of the kickback. [Id. at pages 111-112] Garrett Serikawa was asked whether he had been interviewed by Agent Futa, and agreed that he had. [Id. at page 113] He was asked whether he had not told Agent Futa that his initial meeting with his son Jonn was at his, Garrett's house and not at his office. [Id. at page 113] Garrett replied, "I don't think I said that, but I'm not sure." [Id. at page 114] He was asked about other differences in the two statements. [Id. at page 114-116]

But the Court refused to permit Defendant Mirikitani to call Agent Futa to testify regarding his interview of Garrett Serikawa on the basis that it concerned a collateral matters. However, the testimony here - Garrett Serikawa's description of events intimately connected with the offense - was not collateral, and was critical to the jury's assessment of Garrett Serikawa's credibility. All the procedural requirements of F.R.E. 613(b) had been met: (a) Garrett Serikawa was an important prosecution witness in that, unlike Jonn Serikawa or Cindy McMillan, he was testifying without a grant of immunity; and (b) his testimony supported Jonn Serikawa's version of the bribe-kickback story. As Judge Weinstein writes:

> Extrinsic evidence of the inconsistent statement may be introduced not only if it is relevant - i.e., tends to prove or disprove a material proposition - <u>but also if it tends to impeach some specific testimonial quality</u>. Included are such matters as bias, corruption, intoxication and the like.

3 Weinstein's Evidence ¶ 613[02] (emphasis added).

Further, evidence demonstrating inconsistencies in Garrett's testimony fits within a category of noncollateral facts which category <u>is</u> deemed relevant to the jury's assessment witness credibility:

> This category covers "the contradiction of any part of the witness' account of <u>the background and circumstances of a material transaction, which as a matter of human experience he would not have been mistaken about if his story were true</u>." For example, if a witness to an auto accident testifies that it took place on a sunny day, extrinsic evidence that the accident took place during a blizzard and at night should be admitted even if weather and ability to perceive are not issues. If the witness is to be believed as to any part of his description of the accident, <u>he could not be so mistaken about such an obvious part of the surrounding circumstances</u>. This category of noncollateral facts again is consistent with Rule 403. Even though these facts are not probative of any substantive issue in the case, they shed sufficient light on the issue of witness credibility to warrant the time spent hearing extrinsic evidence.

27 Wright & Miller, *Federal Practice And Procedure*, <u>Witnesses</u>, § 6096 (emphases added; footnote omitted). The location of the meeting between Garrett and Jonn is an "obvious part of the surrounding circumstances." Defendant Mirikitani was entitled to show the jury that Garrett's testimony lacked credibility because if his story were true, he would never have been mistaken about the location of the meeting with his son. The fact that Garrett's story changed from the time he gave a statement to Agent Futa to the time he testified at trial was relevant to the jury's determination of Garrett's credibility.

In <u>State v. Altergott</u>, 57 Haw. 492, 507-508, 559 P.2d 728, 738 (1977), the Hawaii Supreme Court, quoting a case from the Eighth Circuit, explained as follows:

> It was proper, relevant, and material cross-examination to draw forth from this witness the fact that, <u>when the</u>

> <u>transaction was recent and his recollection was fresh, he had told a different story, one so inconsistent with that to which he had testified that both stories could not be true</u>. That was material cross-examination, because it at once challenged the credibility of his testimony, and, the more in detail his first story was, the more incredible it rendered his evidence. Neither a witness nor a party may lawfully escape such cross-examination by his mere testimony or admission that the witness has made statements inconsistent with his testimony at the trial and that they were false. <u>Cross-examination may not be shut off in this way</u>. The cross-examiner has the right to prove by his adversary's witness, if he can, what inconsistent statements he has made, not only in general, but in every material detail, for, the more specific and substantial the contradictory statements were, the less credible is the testimony of the witness.

(Emphases added); (quoting <u>Heard v. United States</u>, 255 F. 829, 832 (8th Cir. 1919)).

The credibility of a witness at trial is always an issue and here, where substantially differing accounts of the post-incident conduct were given (1) by Garrett Serikawa as related by Agent Futa, (2) by Garrett Serikawa in testimony at trial, and (3) by Jonn Serikawa, the jury was entitled to learn of those contradictions and to draw inferences concerning the credibility of the witnesses from that evidence. The Court, however, foreclosed Defendant's ability to bring the issue of Garrett's credibility to the jury. Defendant Mirikitani suffered substantial prejudice as a result of the exclusion of this essential impeachment evidence.

  B.  <u>The Scope of the Cross-Examinations of Cynthia McMillan, Jonn Serikawa and Agent Futa Here Improperly Limited and Chilled Defendant's Ability to Cross-Examine the Government's Witnesses</u>.

Ms. McMillan testified that during the summer of 1999, she did not believe the alleged scheme was an illegal kickback. During cross-examination, in an attempt to attack McMillan's credibility, defense counsel questioned McMillan in detail regarding her understanding of the bribe-kickback scheme at each and every meeting she had

with Defendant. During questioning with respect to the third meeting, the Court, however, told defense counsel to "move on" to another subject. [Tr. 6/13/01 at page 203; a true and correct copy of excerpts from the 6/13/01 transcript is attached hereto as Exhibit C.]

Also during cross-examination, McMillan agreed that in her grand jury testimony she had testified that she <u>believed</u> Defendant used the term "deal" during their first meeting in late May or early June 1999. [Tr. 6/14/01 at pages 8-9; a true and correct copy of excerpts from the 6/14/01 transcript is attached hereto as Exhibit D.] McMillan then testified that during her grand jury testimony, she only used the phrase "I believe" when she was certain of the events she was describing. [Id. at page 10] Defense counsel then attempted to impeach McMillan by demonstrating that she had used the phrase "I believe" during her grand jury testimony when in fact she was not certain of the events she was describing. [Id. at 10-14] Following a sidebar, the Court ruled that defense counsel could not impeach McMillan on that basis. [Id. at 15-17] Subsequently, defense counsel attempted to question McMillan regarding the leading questions asked of her when she testified before the grand jury. [Id. at 22-26] The Court again prohibited Defendant's cross-examination. [Id.]

During cross-examination of Serikawa, defense counsel attempted to question him about discussions with Agent Futa, held after the initial meeting but before the Tantalus conversation, during which Agent Futa instructed Serikawa regarding questioning Defendant Mirikitani at the Tantalus conversation. The Court, however, cut off this line of questioning, barring defense counsel from demonstrating to the jury that Agent Futa told Serikawa to make false statements to Defendant Mirikitani for the

purpose of gaining admissions to bolster the government's case. [Tr. 6/19/01 at 123-129; a true and correct copy of excerpts from the 6/19/01 transcript is attached hereto as Exhibit E.] In addition, the Court did not allow defense counsel to impeach Serikawa regarding inconsistencies in his statements regarding when and where he gave the first cash payment to Defendant Mirikitani. [Tr. 6/19/01 at 158-169]

During cross-examination of Agent Futa, the Court again limited Defendant Mirikitani's defense by barring questions regarding the formation of the immunity agreement and inquiry about Agent Futa's instructions to Serikawa regarding role-playing and making false statements prior to the Tantalus conversation. [Tr. 6/21/01 at 65-67; a true and correct copy of excerpts from the 6/21/01 transcript is attached hereto as Exhibit F.]

"The cross-examiner has the right to prove by his adversary's witness, if he can, what inconsistent statements he has made, not only in general, but in every material detail, for, the more specific and substantial the contradictory statements were, the less credible is the testimony of the witness." Altergott, 57 Haw. at 507-508, 559 P.2d at 738. Defendant had a right to cross-examine McMillan, Serikawa and Agent Futa with regard to every material detail of their testimony. The Court, however, limited Defendant's ability to cross-examine those witnesses, and substantially prejudiced Defendant.

III. **A NEW TRIAL IS REQUIRED BECAUSE OF ERRORS IN THE JURY'S VERDICT AS TO WIRE FRAUD.**

The wire transmission at issue here was a data transmission from the Hawaii Campaign Spending Commission in Honolulu to its contractor, SDR

Technologies, Inc. in Westlake Village, California, on February 3, 2000. Superseding Indictment, ¶ 6. This was at a time after the alleged bribe, kickback, and receipt of funds by Defendant had all been completed, and, in the Government's theory, was part of Defendant Mirikitani's effort to conceal the McMillan kickback as a campaign contribution. Use of a wire communication after a scheme has been completed and the proceeds received can provide the jurisdictional "wire" element only if the purpose of the use is to conceal the acts or to lull the victim into non-action. Kann v. United States, 323 U.S. 88 (1944). Here the alleged scheme reached fruition at the latest when the campaign spending reports were filed with the Campaign Spending Commission, several days before the wire use. If, arguendo, it was Defendant Mirikitani's purpose to characterize the proceeds of a kickback as a campaign contribution, that goal was fully achieved when he filed his campaign spending report, which completed the scheme, so far as Defendant Mirikitani was concerned. The subsequent wire transmission from the Campaign Spending Commission to California was perhaps foreseeable, just as a bank's forwarding a check or credit card slip in the normal course of business is foreseeable, but it was for the Campaign Spending Commission's, and not for Defendant Mirikitani's purposes, and thus cannot be said to be for the purpose of implementing any scheme. See, e.g., Parr v. United States, 363 U.S. 370 (1960); United States v. Maze, 414 U.S. 395 (1974), discussed in Schmuck v. United States, 489 U.S. 705 (1989). Further, giving wide publicity via the Internet to an alleged political contribution is the exact opposite of concealment. Had Defendant Mirikitani intended to conceal the scheme, he could have kept it completely "off the books" of the Friends of Mirikitani, rather than reporting it with resulting publicity.

Because the verdict on the wire fraud count is based on an erroneous interpretation of that statute which ignores the well-settled "fruition" doctrine, the interest of justice requires a new trial on that count as well. In addition, because of the prejudicial spillover effect discussed supra § I, Defendant Mirikitani urges that his erroneous conviction on Count 1 requires a new trial on all counts.

IV.   CONCLUSION

For all the reasons stated above, this Court should grant Defendant Mirikitani's motion and order a new trial on all counts herein.

DATED: Honolulu, Hawaii, July 13, 2001.

_____
JOHN S. EDMUNDS
RONALD J. VERGA
CATHERINE A. KENDRICK

Attorneys for Defendant
ANDREW K. MIRIKITANI